UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. ACTION NO. 12-00142 |
| VERSUS | JUDGE ROBERT G. JAMES |
| SHONDOLYN ROCHELLE BLEVINS | MAG. JUDGE JAMES D. KIRK |

RULING

Pending before the Court are Defendant Shondolyn Rochelle Blevins' ("Blevins") Motion to Continue [Doc. No. 78], Motion for Criminal Justice Act Funds [Doc. No. 79] and Motion for Additional Criminal Justice Act Funds [Doc. No. 80]. For the following reasons, Blevins' motions are DENIED.

This is the second criminal case filed against Blevins. On January 26, 2011, Blevins was indicted on three counts: (1) possession with intent to distribute 28 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) the possession of a firearm during and in relation to drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) the possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *United States v. Blevins*, Case No. 11-00012 ("*Blevins I*") [Doc. No. 1].

During the pendency of *Blevins I*, Blevins was first represented by Assistant Federal Public Defender Betty Marak and later by appointed counsel, Robert Noel. During the time she was represented, Blevins' counsel filed two motions to suppress on her behalf, which were ultimately denied by the Court. By February, 2012, both her attorneys had been allowed to

withdraw, and, at her request, Blevins represented herself.

On May 15, 2012, the Court dismissed *Blevins I* without prejudice based on Speedy Trial Act violations.

Three days later, on May 18, 2012, the Government obtained a second Indictment against Blevins on identical charges and filed the instant case. Blevins also represents herself in the present case, but the Court appointed Mr. Noel as standby counsel based on his familiarity with the case.

On June 1, 2012, Blevins filed a Motion to Suppress Evidence Seized After an Illegal Arrest and Motion to Suppress Evidence Seized in Violation of Fourth Amendment ("Motion to Suppress") [Doc. No. 18]. She raised the arguments previously made by her counsel in *Blevins I*, but added the claim that she is the victim of a government conspiracy to alter audio and video recordings and the transcripts of those recordings. *See* [Doc. No. 18 ("False Unlawfully Altered Audio/Video Evidence")].

On the same day she filed her Motion to Suppress, Blevins also filed a Motion for Criminal Justice Act Funds ("First Motion for CJA Funds") [Doc. No. 16]. She requested CJA funds for "an expert in audio/video evidence and an investigator." *Id.* (capitalization deleted).[1]

On June 4, 2012, Magistrate Judge Kirk held a status conference on Blevins' pending motions.[2] After discussion with Blevins and counsel for the Government, Magistrate Judge Kirk set a briefing deadline on the motions. In response to Blevins' Motion for Discovery [Doc. No. 17], the Court ordered the Government to provide Blevins with another copy of the

---

[1] Blevins regularly uses initial capitalization throughout her filings. The Court will use initial capitalization only where appropriate.

[2] Blevins also filed several other motions not relevant to this ruling.

audio/video recordings associated with her arrest warrant.[3] Magistrate Judge Kirk also set trial for August 27, 2012.

On June 11, 2012, Magistrate Judge Kirk issued an Order [Doc. No. 29] requiring Blevins, in accordance with 18 U.S.C. § 3006A(e)(1), to explain in an *ex parte* letter to the Court by June 29, 2012, "why she wants to employ expert witness(es) and how an investigator will assist her in the defense of her case."

On June 14, 2012, Blevins moved to amend her Motion to Suppress to add claims that evidence in this case should be suppressed based on "(1) pre trial ineffective assistance of counsel[,] (2.) prosecutorial misconduct[, and] (3.) false evidence/perjured testimony." [Doc. No. 30]. The same day Blevins also filed an affidavit[4] [Doc. No. 34] with the Court in which she stated that she was requesting an expert to "examine the originals" of the "audio/video associated with the arrest warrant which forms the basis of my federal indictment" because they have been "unlawfully altered in ways which are relevant and material." *Id.* She also stated that she needed an investigator "to locate and question witnesses" and "locate evidence." *Id.*

---

[3]The Government previously provided Blevins with a copy of the audio/video surveillance tapes during the pendency of *Blevins I*.

[4]The document Blevins filed does not meet the legal requirements for an affidavit, but does generally meet the requirements for a sworn declaration. *See* 28 U.S.C. § 1746 ("Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . (2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature.)'").

On June 15, 2012, Magistrate Judge Kirk issued an Order [Doc. No. 35] granting Blevins' Motion to Amend her Motion to Suppress and granting her first Motion for CJA Funds. Magistrate Judge Kirk limited Blevins' CJA funds to $800 to hire an expert who must "be qualified by education and experience in order to testify as to the alteration of the video tape."  The June 15, 2012 Order further stated that the "money authorized for an expert shall only be spent on such an expert.  Should the authorized amounts not be sufficient, defendant may apply to the court for additional funds only upon showing the specific re[]asons that more money is needed and shall provide a full accounting of the moneys spent so far."  *Id*.  Thus, while the motion was technically "granted," Magistrate Judge Kirk only ordered the release of CJA funds to hire an expert, not an investigator.  Magistrate Judge Kirk also ordered, again, that the Government provide Blevins with another copy of the requested video.

On July 12, 2012, a hearing was set on Blevins' Motion to Suppress.  Although the hearing commenced, Magistrate Judge Kirk continued the hearing to allow Blevins to produce expert testimony to support her contention that the audio/video recordings and transcripts have been altered. [Doc. Nos. 55, 56 & 59].  Magistrate Judge Kirk set a deadline of July 26, 2012, for Blevins to identify her expert to the Court and the Government.  *Id*.  If Blevins met the initial deadline, Magistrate Judge Kirk stated that she would have an additional two weeks to obtain a written report from the expert. [Doc. Nos. 55 & 56].  Magistrate Judge Kirk explained that if Blevins was able to retain an expert, but the expert needed additional time to complete his work, the Court would grant an extension of time. [Doc. No. 55].  Nevertheless, Magistrate Judge Kirk explained that it was the intent of the Court to have the expert issue resolved in time for the August 27, 2012 trial.  *Id*.

On July 20, 2012, the trial was continued for two days to August 29, 2012. [Doc. No.

62].

A pre-trial conference was held in open court on July 31, 2012. During the conference, Blevins was permitted to file a Motion to Preserve/Reserve Arguments. [Doc. No. 64]. In the motion, she stated that she had "diligently attempted to hire an expert and investigator but mostly she has focused on an expert." *Id.* She contended that she had been limited by the administration at Richland Parish Detention Center ("RPDC") on the number of telephone calls she could make, but that she had contacted "numerous agencies to no avail." *Id.* Therefore, she asked the Court that "her arguments not be considered exhausted." *Id.* Magistrate Judge Kirk discussed Blevins' latest motion with her and counsel for the Government. He suggested, as he had before, that Mr. Noel, standby counsel, could assist Blevins in locating an expert. However, Blevins refused Mr. Noel's assistance. [Doc. No. 65]. Magistrate Judge Kirk then granted Blevins an extension to August 10, 2012, "to locate and identify an expert." *Id.* Blevins was specifically instructed that by that deadline she "must notify the Court and the Government of the name of her expert, and, if unable to do so, she will proceed to trial without an expert." *Id.* During the pre-trial conference, the United States Marshal's Service assured the Court that Blevins would be permitted to use the telephones at RPDC to contact potential experts.

On August 9, 2012, Magistrate Judge Kirk issued an Order [Doc. No. 66] granting in part and denying in part Blevins' Motion to Preserve/Reserve Arguments [Doc. No. 64]. Magistrate Judge Kirk stated that Blevins is permitted to make any arguments she wishes and, thus, this part of her motion was granted. However, he denied Blevins' motion to reserve arguments. He pointed out that Blevins seemed to be more interested in preserving issues for appeal, rather than actually hiring an expert. He explained that limitations on telephone

privileges should not affect her ability to locate and retain an expert when standby counsel is available to assist her, but she refused his help. Magistrate Judge Kirk then stated "IF DEFENDANT DESIRES TO HAVE AN EXPERT TO EXAMINE THE RECORDINGS FOR SIGNS OF ALTERATION BY THE GOVERNMENT SHE CAN HAVE ONE AND THE TRIAL WILL BE CONTINUED." [Doc. No. 66].

On August 9, 2012, Magistrate Judge Kirk issued a Report and Recommendation [Doc. No. 67] recommending that the Court grant in part and deny in part the Motion to Suppress. Consistent with the Court's ruling in *Blevins I*, Magistrate Judge Kirk recommended that the Court grant the Motion to Suppress and exclude Blevins' alleged statement that there was "crack hidden all over the house," but otherwise deny the motion. He specifically noted, however, that his Report and Recommendation would be subject to reconsideration if Blevins identified an expert by the then-deadline of August 10, 2012. *Id.*

On August 10, 2012, Blevins filed a Motion for Extension [Doc. No. 68], requesting the Court to grant her an unspecified extension of the deadline to identify an expert because she "had only been allowed one phone call per Assistant Warden Tina Hill." *Id.* That day, Magistrate Judge Kirk issued an Order [Doc. No. 69] granting Blevins a third extension of time until August 20, 2012, to employ and identify an expert regarding the audio/video tapes. Magistrate Judge Kirk rejected Blevins' excuse that she is not allowed to make sufficient telephone calls to retain an expert because the Court had contacted the United States Marshal's Service to ensure that she has the opportunity to make calls and, in any event, Mr. Noel is available to assist her. Magistrate Judge Kirk reminded Blevins that trial is still set for August 29, 2012, unless she retains an expert.

On August 13, 2012, Blevins filed another "Request to Hire Expert/Investigator" [Doc.

6

No. 70]. She explained that she had "negotiated a deal with Mr. Steve Randall" of Randall Investigations and that she was attempting to retain Mr. Stuart Allen as an expert, but that Mr. Allen would be traveling until October 15, 2012. *Id.* She asked that the Court "reply immediately as to whether or not she can hire Mr. [Stuart Allen]" with CJA funds. *Id.*

In light of the continuing issues with Blevins' attempts to locate and employ an expert, the Court held a status conference in open court on August 15, 2012. During that conference, the Court denied Blevins' Request [Doc. No. 70] as moot because she had already been granted $800 in CJA funds to retain an expert. Magistrate Judge Kirk participated in the conference by telephone. He explained that his order was somewhat confusing, but that he had never approved the use of CJA funds to hire an investigator because Blevins refused to identify why she needed an investigator. Because of this confusion, the Court told her that she could submit an *ex parte* letter to chambers by August 20, 2012, detailing the need for an investigator. The United States Marshal's Service again assured the Court that Blevins has been, and continues to be, allowed to use the telephone at RPDC.

On August 20, 2012, Blevins' timely filed objections [Doc. No. 77] to the Report and Recommendation on her Motion to Suppress.

On August 21, 2012, the Court received the instant Motion to Continue [Doc. No. 78], Motion for Criminal Justice Act Funds ("Second Motion for CJA Funds") [Doc. No. 79] and Motion for Additional Criminal Justice Act Funds ("Motion for Additional CJA Funds") [Doc. No. 80].

On August 22, 2012, the Court ruled on Blevins' Motion to Suppress. After reviewing the record in this matter, including those portions of *Blevins I* incorporated by reference, the Court agreed with the Report and Recommendation of Magistrate Judge Kirk.

7

The Court excluded Blevins' alleged statement that there was "crack hidden all over the house," but otherwise denied the motion.

In her latest motions, Blevins requests a continuance of trial to December, 2012, to give her expert "ample time to review the evidence or recording," [Doc. No .78], but then concedes that she has not retained an expert because Mr. Allen requires a fee of $4,000 per recording, and she has only $800 in CJA funds available. [Doc. No. 80]. Finally, she explains that she wants CJA funds for an investigator to find people who were in Courtroom #6 of the Ouachita Parish Courthouse on October 27, 2010, so that she can find someone who supports her contention that the video recording of her probation revocation hearing was altered. [Doc. No. 79].

The Court has carefully considered Blevins' motions, but finds no basis to continue trial or to grant her request for additional funds. Throughout this process, in both *Blevins I* and the current case, the Court has afforded Blevins every opportunity to present an adequate defense. She was appointed not one, but two experienced criminal defense attorneys, each of whom filed a motion to suppress on her behalf, but neither of whom found merit to her defense that the audio/video recordings were altered.[5] Nevertheless, the Court provided Blevins with adequate funds of $800 to retain an audio/video recording expert, so she could pursue this possible defense. Despite three extensions of time, the offers of assistance by her standby counsel (which she rejected), and her ability to freely use the RPDC telephones,

---

[5]Indeed, in open court, Mr. Noel, her current standby counsel, admitted that he had no indication or evidence that the recordings had been altered.

8

Blevins has identified only one potential expert she might or might not be able to retain if trial were continued. In addition, the expert charges $4,000 per recording, a fee far in excess of the CJA funds available. To date, Blevins has offered only her own self-serving statements that the audio/video recordings (and transcripts) have been altered.

More importantly, the Government has stated that it does not intend to offer into evidence at trial any of the audio/video recordings Blevins contests. The Government has filed its exhibit list, and no audio/video recordings are on that list. If the Government does not rely on the audio/video recordings to support the charges against Blevins, then any evidence Blevins has about alteration of those recordings is irrelevant. No purpose would be served by allowing Blevins more time to identify and attempt to retain an audio/video recording expert or by ordering additional CJA funds to retain that potential expert and an investigator, so that she may engage in a fishing expedition to support her irrelevant and unsupported conspiracy theory.

Whenever a defendant requests a continuance of a criminal trial, the Court considers whether the ends of justice served by granting a continuance outweigh both the defendant's and the public's interests in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(B) (Among other facts, "which a judge shall consider in determining whether to grant a continuance . . . are . . . (i) Whether the failure to grant such a continuance in the proceeding would be likely to . . . result in a miscarriage of justice. . . .[or] (ii) Whether the case is so unusual or so complex . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section . . . [or] . . .(iv) Whether the failure to

grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny . . . counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."). In this case, the interests of justice would not be served by the granting of a continuance and the ordering of additional CJA funds. This is not an unusual or complex case. Blevins is the sole defendant in this case and is charged with typical drug trafficking and firearms violations. Although the second case has been pending for only a short time, Blevins has been aware of all charges against her since January 26, 2011, and has had ample opportunity to prepare for trial. She has been provided and chosen to reject representation by competent counsel, as is her right, and has sought relief from the Court by filing numerous motions. She has now chosen to focus her *pro se* efforts on an irrelevant inquiry, which has not and will not provide a defense to the charges against her.

    Accordingly, Blevins' Motion to Continue [Doc. No. 78], Second Motion for CJA Funds [Doc. No. 79], and Motion for Additional CJA Funds [Doc. No. 80] are DENIED. Trial will proceed on August 29, 2012.

    MONROE, LOUISIANA, this 23rd day of August, 2012.

                                                     ROBERT G. JAMES
                                                     UNITED STATES DISTRICT JUDGE